IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CUSTOMERS BANK,** | : | |
| | : | |
| **Plaintiff,** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 20-4262 |
| | : | |
| **OPTIX PARTNERS, LLC,** | : | |
| | : | |
| **Defendant.** | | |

**MEMORANDUM**

**TUCKER, J.**                                                                                          November **5th**, 2021

Presently before the Court is Plaintiff Customers Bank's Motion for Summary Judgment (ECF No. 32), Defendant Optix Partners, LLC's Response in Opposition and Cross Motion for Sanctions (ECF No. 36), Plaintiff's Reply to the Response (ECF No. 38), and the Parties' declarations and exhibits.

Upon careful consideration of the Parties' submissions, issues of material fact remain as to Plaintiff's breach of contract claim and its eligibility to retain the non-refundable deposit. Accordingly, Plaintiff's Motion for Summary Judgment, in the Form of a Declaratory Judgment, (ECF No. 32) is **DENIED** and the claim must be litigated.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**[1]

At issue in this case is a Loan Sale Agreement under which Optix Partners, LLC (Optix) was supposed to close on a loan sale within a specified timeframe, which did not occur. Optix

---

[1] In the Factual and Procedural Background section, the Court draws from the facts submitted by Plaintiff in its Complaint (ECF. No. 1), its Motion for Summary Judgment (ECF No. 32), and its Reply to the Response (ECF No. 38). The Court draws from facts submitted by Defendant in its Answer (ECF No. 7), its Response in Opposition (ECF No. 36), and its Response to Plaintiff's Statement of Undisputed Material Facts and Counterstatement of Disputed Material Facts (ECF No 37).

1

alleges they failed to meet the timeframe because of Customers Bank's intentional breach of contract.

On May 21, 2020, Customers Bank (Bank), as the seller, entered into a Loan Sale Agreement ("LSA") with Standard Oil Capital Group, LLC ("Standard Oil"), as a buyer, for the sale and assignment of a $42,650,000 commercial loan ("Loan") including all Loan Documents, and all rights and obligations related thereto. Compl. 2. The LSA required Standard Oil to: (1) make a non-refundable $100,000 cash deposit, which was delivered to the Bank's counsel; (2) place the cash deposit in a non-interest bearing account; and (3) close on the loan sale by June 9, 2020. *Id.* On June 9th, the Bank and Standard Oil agreed to extend the closing date to June 23, 2020 in an addendum (First Addendum), in exchange for another $50,000 non-refundable deposit. *Id.* Optix was not a party to the initial Loan Sale Agreement. *Id.*

On June 23, 2020, Standard Oil contracted its assignment to Optix. That contract assigned all of Standard Oil's rights and obligations under the LSA. Compl. 2-3.

On June 23, 2020, the Bank and Optix executed a Second Addendum to the LSA which amended the purchase price (in graduated steps up to $18,000,000) and obligated Optix to close on the loan sale by July 30, 2020. *Id* at 3. For consideration, Optix agreed to and delivered an additional $175,000 deposit. The Bank's counsel is currently holding the $325,000 deposit in an escrow account at Citizens Bank. *Id.*

On July 16, 2020, Plaintiff sent Defendant a letter stating that Optix breached the LSA by failing to provide proof of financial ability to deliver the purchase price to the Bank. Def. Resp. Opp. Exh. A. Defendant's transactional counsel (Michelle Conroy) and litigation counsel (Nathaniel Kritzer) responded in writing on the same day to Plaintiff's letter, stating that: Optix did not breach the contract, the Bank's assertion was fictional and based on terms not found in

the LSA or addendum, and the Bank's assertion itself was a breach of the Loan Sale Agreement. Def. Resp. Pl. Statement of Undisputed Material Facts and Counterstatement of Disputed Material Facts. Exh. A; Def. Resp. Opp. at 4.   Defendant puts forth that this was the first time the Bank breached the covenant of good faith and fair dealing.  *Id* at 4.

Defendant claims that Plaintiff also breached the LSA by refusing to provide Defendant with basic and easily attainable information related to an easement which was necessary to enable the closing.  Def. Resp. Pl. Statement of Undisputed Material Facts and Counterstatement of Disputed Material Facts 3; Tress Deposition p. 30, lines 13-24; p. 59, line 11 to p. 61, line 17; p.66 line 15 to p. 68, line 13; p. 70, line 10 to p. 71, line12.  This information related to "title defects" rather than due diligence.  *Id.*

In a July 31, 2020 letter, the Bank notified Optix that it was in breach of the amended LSA for failing to deliver the purchase price to the Bank on or before July 30, 2020, and as a result of its failure to close, of the Bank's intention to retain Optix's $325,000 deposit as liquidated damages.  *Id.*

On August 11, 2020, Optix rejected the Bank's termination of the LSA and said they wanted to complete the loan sale "at an unspecified time in the future."  Compl. 3.  The parties re-entered negotiations.  On August 24th, Optix informed the Bank via letter that:

> [T]he primary outstanding issue is the Bank's failure to provide clear [sic] relating to an easement over a multi-story parking structure that services the entire business park. It is crucial that the relative rates paid by the parties subject to the easement be properly allocated. This is a significant issue that has hampered Optix's ability to close the transaction. Once this issue is resolved to our client's satisfaction, we expect that we can proceed to closing promptly.

Def. Resp. to Pl.'s Requests for Admissions 5, Pl. Mot. Sum. J. Exh. 1.

The Bank maintains that on August 24, 2020 negotiations terminated when the parties were unable to reach a new agreement. Compl. 4. Optix recounts that, to the contrary, the parties continued discussion of the LSA after August 24, 2020. Def. Resp. to Pl.'s Requests for Admissions 7, Mot. Sum. J. Exh. 1.

Optix alleges that the Bank violated the LSA a third time when it removed or otherwise refused to timely provide information that the $325,000 deposit was still being held in escrow and had not been turned over to Plaintiff. Def. Resp. Pl. Statement of Undisputed Material Facts and Counterstatement of Disputed Material Facts 4.

The Bank avers they are entitled to relief under the Declaratory Judgement Act. In addition to any such relief as may be just and proper, Plaintiff specifically seeks a declaration that: (1) the Bank is entitled to return of the Deposit as liquidated damages for Optix's breach of the LSA; (2) the Bank's counsel, as escrow agent, is authorized and directed to release and pay over to the Bank the entirety of the $325,000 Deposit plus any interest accrued within five business days of the Court's order; (3) the Bank's counsel is released from its obligations as the escrow agent under the LSA; (4) the Bank is awarded fees and costs for this suit; and (5) the stay of proceedings, pursuant to Fed. R. Civ. P. 62(a), is waived and the period in which an appeal must be filed shall commence immediately upon the Court's summary judgement ruling.

## II.  LEGAL STANDARD

Summary judgment can only be awarded when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, (1986); *Dee v. Borough of Dunmore*,

549 F.3d 225, 229 (3d Cir. 2008).  A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.  A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact.  *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).  When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).  If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001).  Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**III.   DISCUSSION**

First, this opinion will address Plaintiff's summary judgment arguments for its breach of contract claim. Next it will address Defendant's Motion for Sanctions based on procedural and substantive grounds.

**A.  Motion for Summary Judgment**

In Plaintiff's Complaint, it avers that in failing to deliver the purchase price by July 30, 2020, Optix breached their contract and forfeited its deposit, which entitled the Bank to the $325,000 deposit that was held in escrow during the pendency of negotiations. Defendant asserts that Plaintiff negotiated in bad faith and intentionally failed to provide necessary closing documents so that the Bank could sell the loan to a third-party at a higher purchase price or otherwise more favorable terms, and still get a $325,000 windfall from Optix's deposit.  An issue of material fact remains as to which party breached the contract.

For Plaintiff's Motion to succeed, the Court would need to erroneously find that no material facts remain in dispute regarding whether Defendant breached the Loan Sale Agreement or whether Plaintiff acted in bad faith to prevent closing the loan sale.  Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. *Restatement (Second) of Contracts* § 205 (1985); *Donahue v. Fed. Express Corp.,* 753 A.2d 238, 242 (Pa. Super. Ct. 2000); *Kaplan v. Cablevision of Pa., Inc.*, 671 A.2d 716, 722 (Pa. Super. Ct. 1996).  "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party." *Herzog v. Herzog,* 887 A.2d 313, 317 (Pa. Super. Ct. 2005) (quoting *Restatement (Second) of Contracts*, § 205, comment a).

Actions that constitute bad faith include: "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Somers v. Somers,* 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992) (quoting *Restatement (Second) of Contracts*, § 205(d) (1985)).  In Pennsylvania, the doctrine of necessary implication provides that "[i]n the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Daniel B. Van Campen Corp. v. Building & Construction Trades Council*, 195 A.2d 134, 136-127 (Pa. Super. Ct. 1963)*; see also*, *CMR D.N. Corp. v. City of Philadelphia*, 803 F. Supp. 2d 328, 337–38 (E.D. Pa. 2011).  Here, the title information on the parking structure easement was necessary information for Optix to complete the sale and reap the fruits of the contract, and they allege Plaintiff's failed to provide this information in bad faith. A reasonable fact finder could agree, and so a question of material fact persists.

Defendant asserts that Plaintiff repeatedly breached the covenant of good faith and fair dealing in the LSA when it asserted bad faith and fictional breaches of the LSA, with the goal of selling the loan to another party and still keeping Defendant's $325,000 deposit.  Defendant asserts that it stood ready, willing, and able to close on the LSA, but the sale did not happen because the Bank was unwilling. *See* Deposition of Mark Tress ("Tress Deposition") Pl. Mot. Sum. J. Exh 2, p. 67, line 5 to p.68, line 13.  A question remains regarding Plaintiff's bad faith dealings and possible acts to "destroy or injure the other party's right to receive the fruits of the contract," and accordingly, Plaintiff's Motion for Summary Judgment is denied.

### B. Cross-Motion for Sanctions

Included in its response in opposition to the Bank's Motion for Summary Judgment, Optix advanced a claim for sanctions against the Bank on procedural grounds because of the formatting of the Motion for Summary Judgment, and the Bank's choice to submit the motion while a discovery decision about compelling testimony from a corporate designee was still pending rather than negotiating in good faith. Plaintiff failed to contact or confer with Defendant to agree upon undisputed material facts—a required component of a Summary Judgment Motion. Def. Resp. Opp. 2. Because the Court granted Plaintiff's Motion for Protective Order against compelling a corporate designee testimony, that issue is moot and not grounds for sanctions. While it was clearly bad form to fail to confer with Defendant, Defendant submitted its own set of facts which the Court considered in this summary judgment ruling. Further, the formatting and submission style of Plaintiff's Motion for Summary Judgment was not so egregious as to prevent a timely response. Accordingly, Defendant's Motion for Sanctions is denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment in the Form of a Declaratory Judgment is **DENIED**, and Defendant's Cross-Motion for Sanctions is **DENIED**.

An appropriate order follows.